IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES L. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:16-cv-00059 |
| | ) | |
| v. | ) | |
| | ) | Judge Barbara Rothstein |
| U.S. MAGISTRATE SUSAN P. BAXTER, | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| Defendant. | ) | |
| | ) | |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that Plaintiff's Complaint, (ECF No. 4), be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

## II. REPORT

### A. Procedural History/Factual Background

On March 17, 2015, Plaintiff James L. Johnson ("Johnson"), proceeding *pro se*, attempted to file this action in the United States District Court for the Western District of Pennsylvania by submitting a complaint against Defendant United States Magistrate Judge[1] Susan P. Baxter ("Judge Baxter") to the Clerk of Court. (ECF No. 1.) However, Johnson failed to pay the fee associated with filing his Complaint and did not submit a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 2.) Consequently, the Court ordered the Clerk of Court to close the case, but informed Johnson that the case would be reopened if he either paid the $400.00 filing fee or filed

---

[1] Pursuant to § 321 of Pub. L. 101-650, "[a]fter the enactment of this Act [Dec. 1, 1990], each United States Magistrate appointed under [28 U.S.C. § 631] shall be known of as a United States Magistrate Judge…." *See* Note under 28 U.S.C.A. § 631.

a Motion for Leave to Proceed *In Forma Pauperis* within fourteen (14) days of the order's issuance date. (*Id.*) On March 23, 2016, Johnson paid the $400.00 filing fee (ECF No. 3), and the Clerk of Court docketed the Complaint (ECF No. 4). Johnson is incarcerated at Northeast Ohio Correctional Center ("NEOCC"). (Compl., ECF No. 4 at 2.)

On August 15, 2012, Vernon Township police officers arrested Johnson in Crawford County, Pennsylvania for violating firearms laws. (Pl.'s Ex. A to Compl., ECF No. 4-1 at 2.) That same day, Johnson was brought before Magisterial District Judge Michael Rossi ("Judge Rossi") for a preliminary arraignment on the state charges.[2] The docket transcript in the State Case indicates that Johnson was unable to post bail on August 15, 2012 and was being held in Crawford County Jail. (*Id.*) Johnson alleges that, even though Judge Rossi "dismissed" all charges against him[3] and closed the case on August 15, 2012, he remained incarcerated. (Compl., ¶2.) Johnson further alleges that, on August 20, 2012, Judge Baxter detained him with a federal arrest warrant and criminal complaint, which prohibited Crawford County Jail from releasing him. (Compl., ¶¶2-5.)

Specifically as to Judge Baxter, Johnson alleges that she engaged in misconduct by issuing a second arrest warrant against him after he was already apprehended and incarcerated. (Compl. ¶11.) Johnson bases this allegation on his reading of the United States District Court docket in United States v. Johnson, No. 1:12-cr-52 (W.D. Pa.) ("Federal Criminal Case") (Pl.'s Ex. B attached to Compl., ECF No. 4-2). (Compl., ¶¶4-10.) Based on his reading of the docket in the Federal Criminal Case, Johnson alleges that between ECF Nos. 1-3 on August 20, 2012,

---

[2] Johnson mistakenly refers to Judge Rossi as a "U.S. Magistrate Judge." However, it is clear that Judge Rossi was the Magisterial District Judge assigned to the criminal case brought against him by the Commonwealth of Pennsylvania. *See* Commw. of Pa. Crim. Docket, Docket Transcript, Docket No. MJ-30302-CR-0000167-2012 ("State Case") (Pl.'s Ex. A to Compl. at 2.)
[3] The docket transcript in the State Case indicates that the state charges were withdrawn, not "dismissed." (Pl.'s Ex. A to Compl. at 2.)

2

there was no arrest warrant applied for or filed. (Compl., ¶4.) Johnson then alleges that according to ECF No. 3 in the Federal Criminal Case docket, Judge Baxter ordered that the arrest warrant be granted and sealed, and by doing so, approved the criminal complaint and arrest warrant on August 20, 2012.[4] (Compl., ¶5.)

At some point, Johnson obtained a copy of the criminal complaint and arrest warrant. (Compl., ¶6.) Johnson notes a filing date of August 20, 2012 for the criminal complaint, and a filing date of September 19, 2012 for the arrest warrant.[5] (*Id.*) Johnson questions why the filing date for the arrest warrant is September 19, 2012 when both the arrest warrant and criminal complaint were filed and sealed on August 20, 2012. (*Id.*)

Johnson then notes that on the top of the arrest warrant, the words "Document No. 5" appear (Pl.'s Ex. D to Compl., ECF No. 4-4 at 3), but docket entry no. 5 does not mention anything about an arrest warrant.[6] (Compl., ¶7.) A close examination of Plaintiff's Exhibit D reveals that the arrest warrant identified as Document No. 5 was actually filed in the Federal MJ Case, No. 1:12-mj-51, as that case number appears on the top of the arrest warrant to the left of

---

[4] These two statements appear to contradict each other, and the former actually contradicts the docket reports in the Federal Criminal Case and the related magistrate judge case, No. 1-12-mj-51. The Federal Criminal Case docket, attached to Plaintiff's Complaint as Exhibit B, actually shows that a criminal complaint was filed and an arrest warrant issued, both under seal, on August 20, 2012. In addition, the docket report in United States v. Johnson, No. 1:12-mj-51-SPB-1 (W.D.Pa.--Erie) ("Federal MJ Case"), assigned to Judge Baxter, shows that the criminal complaint was filed and an arrest warrant issued as to Plaintiff on August 20, 2012. (Docket Report, No. 1:12-mj-51 (W.D.Pa. Aug. 20, 2012), ECF Nos. 1 & 2.) On September 11, 2012, the Federal MJ Case was transferred to the criminal docket and assigned to Judge Cohill. (Docket Report, No. 1:12-mj-51 (W.D.Pa. Sept. 11, 2012)). Upon the government's motion, on December 18, 2014, Judge Baxter ordered that the Federal MJ Case be unsealed. (ECF Nos. 6 & 7, No. 1:12-mj-51 (W.D.Pa. Dec. 18, 2014)).
[5] Johnson appears to glean this information from the docket report in the Federal Criminal Case (Pl.'s Ex. B to Compl., ECF No. 4-2).
[6] Johnson appears to be referring to entry no. 5 on the docket report in the Federal Criminal Case, No. 1:12-cr-52, which states, "INDICTMENT as to JAMES LAMONT JOHNSON". However, entry no. 5 on the docket report in the Federal MJ Case, No. 1:12-mj-51, states "Arrest Warrant Returned Executed on 9/18/12."

3

"Document No. 5." (ECF No. 4-4 at 3.) Johnson also states that an arrest warrant is filed at ECF No. 19 in No. 1:12-cr-52, although the docket entry does not mention the arrest warrant, but merely states, "Sealed Document as to JAMES LAMONT JOHNSON." (Compl., ¶7.) Based on these observations, Johnson contends that the arrest warrant filed on September 19, 2012 appears to be a second arrest warrant.[7] (Compl., ¶8.)

Johnson contends that the above actions constitute misconduct by Judge Baxter, which she does on a regular basis.[8] (Compl., ¶11.) For relief, Johnson requests administrative judicial intervention and that just and proper action be taken against Judge Baxter for her misconduct. (Compl., Ad Damnum cl.)

**B. Legal Standard**

Pleadings and, in particular, *pro se* complaints are to be liberally construed. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 322 (3d Cir. 2001). Indeed, "'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

---

[7] Johnson's inference simply cannot reasonably be drawn from the facts and documents upon which he relies, and therefore, the Court need not accept it. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) and discussion generally under Legal Standard section, *infra*. The arrest warrant filed at ECF No. 5 in No. 1:12-mj-51 and at ECF No. 19 in No. 1:12-cr-52 is the same document. Moreover, the "Return" section at the bottom of the arrest warrant issued on August 20, 2012 is blank; once the arrest warrant was executed on September 18, 2012, the "Return" section on the arrest warrant was completed and the executed arrest warrant was filed on September 19, 2012 and docketed in both the Federal MJ Case at ECF No. 5, and in the Federal Criminal Case at ECF No. 19.

[8] In addition, Johnson alleges that Judge Baxter attempted to back-date the arrest warrant, changing the date of August 20, 2012 to August 22, 2012, and as a result, he was illegally arrested on September 18, 2012. (Compl., ¶ 9.) Johnson's illogical conclusion—that he was illegally arrested as a result of Judge Baxter's alleged back-dating the arrest warrant (another conclusory allegation)--will be disregarded as it is neither an allegation of fact nor a reasonable inference that flows from the factual allegations. *See Twombly*, 550 U.S. at 556-57 and discussion generally under Legal Standard section, *infra*.

pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

In a § 1983 or *Bivens*[9] action, courts must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins*, 293 F.3d at 688 (italicization added) (quoting *Holley v. Dep't of Veteran Aff.*, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution." (citing *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993))). However, there are limits to courts' procedural flexibility – "pro se litigants still must allege sufficient facts in their complaints to support a claim…. [T]hey cannot flout procedural rules – they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted).

At the earliest practical time, the Court is required to review the Complaint in accordance with the amendments promulgated in the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-34, 110 Stat. 1321 (1996). Pertinent to the case at bar is the authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims. *Id.* Specifically, Congress significantly amended Title 28 of the United States Code, § 1915A, which establishes screening requirements for civil actions brought by prisoners seeking redress from a governmental entity or

---

[9] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). "'*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.'" *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (quoting *Carlson v. Green*, 446 U.S. 14, 18 (1980)). A *Bivens* action is the federal equivalent of a suit brought against state officials under § 1983. *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999)) (other citation omitted); *see also Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001).

5

officer or employee of a governmental entity. 28 U.S.C. § 1915A(a) (1996). Section 1915A(b) requires the federal courts to review complaints and dismiss any action that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from relief. 28 U.S.C. § 1915A(b).

A complaint is frivolous if it "lacks an arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), and is legally baseless if it is "based on indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995).

In determining whether a claim fails to state a claim upon which relief may be granted for the purposes of § 1915A(b), courts apply the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citation omitted) ("[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions."). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement of relief.'"

*Id*. (internal citation omitted) (citing *Twombly,* 550 U.S. at 556-57). The United States Court of Appeals for the Third Circuit has expounded on this standard in light of its decision in *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's decision in *Iqbal*:

> After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 1949-50; *see also Twombly*, 550 U.S. at 555, & n.3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In making this determination, the court must accept as true allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985) (citations omitted).

Moreover, courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol, Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

C. **Analysis**

Because Johnson, a prisoner, pursues this civil action against Judge Baxter, a United States Magistrate Judge, § 1915A applies to the present case. *See* 28 U.S.C. § 1915A(a). Therefore, the Court reviews Johnson's Complaint *sua sponte* to determine if its dismissal is warranted due to any of the following deficiencies: frivolousness, maliciousness, failure to state a claim upon which relief can be granted, or seeking monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b).

1. **Plaintiff's *Bivens* Action**

Johnson does not assert which federal statutes or constitutional rights Judge Baxter allegedly violated. Construing his Complaint liberally, however, Johnson may be asserting a violation of his Fourth Amendment right to be free from unlawful seizures based on his contention that Judge Baxter issued an alleged erroneous federal arrest warrant, which resulted in his unlawful arrest. Civil actions against federal officials to compensate individuals whose constitutional rights were violated can be brought under *Bivens*. 403 U.S. at 395-97 (implying a right to sue federal officials personally for damages to compensate those whose Fourth Amendment rights were violated by these officials); *see also Hartman*, 547 U.S. at 254 n.2 (quoting *Carlson*, 446 U.S. at 18) (finding that *Bivens* confers upon victims of constitutional violations the right to recover damages in federal court against federal officials who commit these constitutional violations "'despite the absence of any statute conferring such a right'").

To the extent Johnson is attempting to assert a *Bivens* action, his claim fails as *Bivens* suits are only actionable when the plaintiff sues federal officials for monetary damages. *Butz v. Economu*, 438 U.S. 478, 504-05 (1978). In *Butz*, the Supreme Court opined that:

> *Bivens* established that a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question

> jurisdiction of the district courts to **obtain an award of monetary damages** against the responsible federal official…. Injunctive or declaratory relief is useless to a person who has already been injured. 'For people in Bivens' shoes, **it is damages or nothing**.'

*Id.* (emphasis added) (quoting *Bivens*, 403 U.S. at 410) (Harlan, J., concurring). Furthermore, the Supreme Court has rejected the proposition that *Bivens* liability be extended to encompass new remedies. *See Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 68-70 (2001) (citations omitted) ("[W]e have consistently refused to extend *Bivens* liability to any new context or new category of defendants."). Consequently, *Bivens* liability does not apply to cases where the plaintiff requests injunctive or declaratory relief. *See also Jaffee v. United States*, 592 F.2d 712, 717 n. 10 (3d Cir. 1979) (citation omitted) ("[U]nless sovereign immunity has been waived, it bars equitable relief as well as legal remedies against the United States.").

In the present case, Johnson requests that the Court order administrative judicial intervention and just and proper action be taken against Judge Baxter for her alleged misconduct. This is not a request for monetary damages. Because Johnson fails to request the relief available under *Bivens*, his Fourth Amendment claim lacks an arguable basis in law, *Neitzke,* 490 U.S. at 325, and therefore, is frivolous pursuant to 28 U.S.C. § 1915A(b)(1).

Accordingly, the Court recommends Johnson's Complaint against Judge Baxter be dismissed.

### 2. Immunity

Even if the Court were to find that *Bivens* actions extend to include claims for equitable relief, or would allow Johnson leave to amend his Complaint to add a request for damages, the

doctrines of sovereign immunity and absolute judicial immunity bar Johnson's claim against Judge Baxter.[10]

### a. Sovereign Immunity

The sovereign immunity doctrine deprives courts of subject matter jurisdiction to hear civil suits against the United States government. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). As a result, the doctrine shields the United States government and its agencies from civil suit unless the United States has expressly waived such immunity. *Id. See also United States v. Mitchell*, 463 U.S. 206, 212 (1983) (footnote omitted) (opining that "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction[,]" and holding that the Tucker Act constitutes such a waiver of sovereign immunity for claims brought under that Act); *Clinton Cty. Comm'rs v. United States EPA*, 116 F.3d 1018, 1021 (3d Cir. 1997) (citations omitted) (Plaintiffs "must identify a specific statutory provision that waives the government's sovereignty from suit. A waiver of immunity must be 'uneqivocally expressed,' and is 'construed strictly in favor of the sovereign.'").

The sovereign immunity doctrine not only shields the United States government, as an entity, from civil suit, but also all federal officials who injure individuals while acting in their official capacities. *Meyer*, 510 U.S. at 485 (citing *Bivens*, 403 U.S. at 397); *Treasurer of N.J. v. United States Dep't of Treasury*, 684 F.3d 382, 395-96 (3d Cir. 2012) (citing *United States v.*

---

[10] Johnson's Complaint does not specify as to whether he is suing Judge Baxter in her official capacity or her personal capacity, or in both capacities. Therefore, the Court considers the claim as if Johnson is suing Judge Baxter in both capacities.

*Mitchell*, 445 U.S. 535, 538 (1980)). This is because claims against federal officials acting in their official capacities are deemed to be actions brought directly against the United States government. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Graham*, 473 U.S. at 165) ("emphasiz[ing] that official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"). For this reason, the sovereign immunity doctrine bars civil actions, including *Bivens* actions, against federal officials who allegedly commit constitutional violations while acting in their official capacities, absent an express waiver of such immunity. *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007) (citations omitted).

In the case at bar, the factual allegations demonstrate that Judge Baxter was acting in her official capacity as a federal magistrate judge when she issued the warrant for Johnson's arrest. Under the Federal Magistrate Judges Act, issuing arrest warrants falls within the official judicial duties of federal magistrate judges. 28 U.S.C. § 636(a)(1)(2009) (conferring upon United States Magistrate Judges "all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts[,]" including the power to issue arrest warrants pursuant to Fed. R. Crim. P. 4); *see also United States v. Mikanda*, 416 F. App'x 126, 129 (3d Cir. 2011) (ruling that a magistrate judge acted well within the authority of the Federal Magistrate Judges Act when she issued an arrest warrant, presided over the arrestee's initial court appearance, set conditions of release, and ruled on requests for continuances and motions to proceed *pro se*). As such, the Court finds that Judge Baxter was acting in her official capacity when she allegedly committed the misconduct of which Johnson complains.

Accordingly, Johnson's claim against Judge Baxter in her official capacity is barred by the doctrine of sovereign immunity.

### b. Absolute Judicial Immunity

To the extent Johnson is suing Judge Baxter in her personal capacity, his claim also fails because the absolute judicial immunity doctrine protects Judge Baxter from civil suit. The absolute judicial immunity doctrine exists to facilitate "the proper administration of justice" by shielding judicial officers from suit when they exercise the authority with which they are vested. *Stump v. Sparkman*, 435 U.S. 349, 355 (1978) (citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)). *See also Mireles v. Waco*, 502 U.S. 9, 12 (1991) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006). When judges act in their judicial capacities, they are immune from all civil claims even if "the action [they] took was in error, was done maliciously, or was in excess of [their] authority." *Stump*, 435 U.S. at 356-57. It is only when judges perform judicial acts in "complete absence of all jurisdiction" that judicial immunity does not protect them from suit. *Mireles*, 502 U.S. at 12 (citing *Stump*, 435 U.S. at 356-57); *Azubuko*, 443 F.3d at 303; *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 769 (3d Cir. 2000). This is an especially stringent standard, as it is generally held that, in light of the broad judicial immunity afforded to judges, "'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Whether judicial officials have acted in their judicial capacities in any particular case, however, is a functional inquiry. *See Forrester v. White*, 484 U.S. 219, 227 (1988) ("[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches."). Judges only act in their judicial capacities when they execute acts normally

performed by a judge and when parties to a suit expect to deal with a judge in his or her official capacity. *Gallas*, 211 F.3d at 768-69 (citing *Stump*, 435 U.S. at 362); *Figueroa*, 208 F.3d at 443. Thus, judges are not afforded judicial immunity for those actions they have taken in an administrative or executive capacity. *See e.g., Forrester*, 484 U.S. at 229-30 (holding that a state court judge's act of demoting a probation officer was done in his administrative capacity, and therefore, the judge was not immune from suit); *Supreme Court of Va. v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 736-37 (1980) (opining that "immunity does not shield the Virginia Court that its chief justice from suit" when the judge was acting as a prosecutor to enforce the Bar Code).

In the instant matter, Johnson contends Judge Baxter engaged in misconduct when she issued an erroneous arrest warrant. However, federal magistrate judges are vested with the authority to issue arrest warrants. *See* 28 U.S.C. § 636(a)(1); Fed. R. Crim. P. 4. Moreover, issuing arrest warrants is a function that parties to a lawsuit expect a magistrate judge to perform. *Mireles*, 502 U.S. at 12 ("A judge's direction to court officers to bring a person who is in the courthouse before him is a function normally performed by a judge."); *Mendoza v. Larotonda*, 270 F. App'x 157, 159 (3d Cir. 2008) (holding that a judge was entitled to judicial immunity for issuing a bench warrant and notice of hearings to plaintiff because they were acts normally performed by a judge and parties expect a judge to perform these tasks). Judge Baxter's act of issuing an arrest warrant for Johnson's arrest in 2012, therefore, was performed in her judicial capacity.

Moreover, Judge Baxter signed the warrant when she had jurisdiction over Johnson's underlying federal criminal case. While federal district courts are courts of limited jurisdiction, federal judges are vested with the authority to preside over federal criminal cases to which they

are assigned. 18 U.S.C. § 3231 (1948) ("The district courts of the United States shall have jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Furthermore, the Federal Magistrate Judges Act gives federal magistrate judges authority to sign arrest warrants for individuals who are alleged to have violated federal law in counties within the federal district court over which they preside. *See* 28 U.S.C. § 636; 28 U.S.C. 118(c) (1998) (indicating that Crawford County is located in the Western District of Pennsylvania). The criminal complaint presented to Judge Baxter indicates that the violations brought against Johnson occurred in Crawford County within the Western District of Pennsylvania. (Pl.'s Ex. C to Compl., ECF No. 4-3.) Because Judge Baxter has been appointed and reappointed as a United States Magistrate Judge by the District Judges of the United States District Court for the Western District of Pennsylvania, assigned to the Erie Division, she possessed subject matter jurisdiction over the criminal complaint docketed at No. 1:12-mj-51 (W.D. Pa.). Where, as here, a court has subject matter jurisdiction over a matter in some way, that court generally has jurisdiction sufficient for immunity purposes. *Figueroa*, 208 F.3d at 443-44 (quoting *Barnes*, 105 F.3d at 1122). Thus, in issuing the arrest warrant for Johnson in accordance with the underlying criminal action, Judge Baxter acted within the jurisdiction of the Western District of Pennsylvania, and in her judicial capacity.

Johnson's request for injunctive relief against Judge Baxter is also barred by the absolute judicial immunity doctrine. The Federal Court Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat. 3847 (1996) (codified as amended at 42 U.S.C. § 1983 (2012)) (hereinafter "FCIA"), extended absolute judicial immunity to claims seeking injunctive relief against judges. The FCIA provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory

decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. The court of appeals noted that the 1996 amendment to § 1983 applies to both state and federal judges. *See Azbuko*, 443 F.3d at 304 (citing *Bollin v. Story*, 225 F.3d 1234, 1242 (11th Cir 2000);[11] *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 433 n. 5 (1993) (other citation omitted).

Generally, in order to overcome the absolute immunity afforded to judges by the FCIA, individuals seeking injunctive relief against a judicial official in his or her judicial capacity must allege that a declaratory decree was violated, or that declaratory relief was unavailable. *See Azubuko*, 443 F.3d at 304; *Van Tessel v. Lawrence Cty. Domestic Rel. Sec.*, 659 F. Supp. 2d 672, 698 (W.D. Pa. 2009) (citations omitted). The court in *Van Tassel* found that a *pro se* plaintiff's complaint that failed to allege a violation of a declaratory decree or that declaratory relief was unavailable, did not sufficiently overcome the absolute immunity afforded to judges by the FCIA and § 1983. 659 F. Supp. 2d at 698. Consequently, the court dismissed the plaintiff's claims for injunctive relief. *Id. See also Azubuko*, 443 F.3d at 304 (barring *pro se* plaintiff's claim for injunctive relief against a federal judge where plaintiff failed to allege that a declaratory decree was violated or that declaratory relief was unavailable and the injunctive relief sought addressed actions taken by the judge in his official capacity).

Judge Baxter, at all relevant times, acted in her judicial capacity and did not act in "complete absence of jurisdiction." *See supra* Part C(2)(b) at 13-14. Here, as in *Azubuko* and *Van Tassel*, the Plaintiff, Johnson, has not alleged that he was denied declaratory relief or that it was unavailable. As in *Azubuko* and *Van Tassel*, Johnson cannot circumvent the absolute judicial immunity afforded to Judge Baxter against claims of injunctive relief under the FCIA.

---

[11] In *Bolin*, the Eleventh Circuit held that the 1996 amendment to § 1983 applied to federal judges sued under *Bivens* and, thus, only declaratory relief was available to plaintiffs. 225 F.3d at 1242. As an adequate remedy at law existed, the *Bolin* Court determined that plaintiffs were not entitled to declaratory relief. *Id*.

Accordingly, as Johnson's cause of action is barred when construed as either an official capacity lawsuit or a personal capacity lawsuit against Judge Baxter, the Court recommends that Johnson's Complaint against Judge Baxter be dismissed with prejudice.[12]

**CONCLUSION**

For the reasons set forth above, it is respectfully recommended that the Complaint filed by James L. Johnson be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file objections thereto. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file timely objection shall constitute a waiver of any appellate rights.

Dated: August 4, 2016                             BY THE COURT:

                                                  LISA PUPO LENIHAN
                                                  United States Magistrate Judge

---

[12] In *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008), the United States Court of Appeals for the Third Circuit has ruled that if a court is dismissing a claim pursuant to 12(b)(6) in a civil rights case that it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d at 245. *See also Day v. Florida*, 563 F. App'x 878, 881 (3d Cir. 2014) (applying the curative amendment rule to § 1915 dismissals). In the case at bar, the Court cannot envision any facts that would change its analysis with regard to application of sovereign immunity and absolute judicial immunity to Judge Baxter. Therefore, the Court finds that it would be futile to grant Johnson leave to amend his Complaint as to United States Magistrate Judge Baxter and recommends that Johnson's claim against her be dismissed with prejudice.

16

cc: JAMES L. JOHNSON
Northeast Ohio Correctional Center (NEOCC)
2240 Hubbard Road
Youngstown, OH 44505
*Via U.S. First Class Mail*